IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

PETER B.,[1]                                                        Case No. 1:21-cv-00437-YY

                Plaintiff,                               OPINION AND ORDER

      v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____

YOU, Magistrate Judge.

       Peter B. ("Plaintiff") brings this appeal challenging the denial by the Commissioner of

the Social Security Administration ("Commissioner") of his application for Disability Insurance

Benefits (DIB) under Title II of the Social Security Act.  The court has jurisdiction to hear this

appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42

U.S.C. § 405(g).  For the reasons explained below, the Commissioner's decision is reversed and

remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
plaintiff and plaintiff's family members.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    Plaintiff's Application**

Plaintiff filed his application for DIB on December 14, 2016, alleging disability as of November 15, 2016, due to torn meniscus in the knees, Morton's neuroma of the right foot, and Hepatitis C. Tr. 133, 165. The Commissioner denied plaintiff's application initially and upon reconsideration. Tr. 59, 68. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on October 22, 2019. At the hearing, plaintiff amended the alleged disability onset date to May 4, 2016. Tr. 29-58. Following the administrative hearing, ALJ

MaryKay Kauenzahn issued a written decision dated November 22, 2019, denying plaintiff's

application.  Tr. 10-22.  The Appeals Council denied plaintiff's request for review, making the

ALJ's decision the Commissioner's final decision subject to review by this court.   Tr. 1-5.

## II.    The Sequential Analysis

A claimant is considered disabled if the claimant is unable to "engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which . . . has lasted or can be expected to last for a continuous period of not less than 12

months[.]"  42 U.S.C. § 423(d)(1)(A).  "Social Security Regulations set out a five-step sequential

process for determining whether an applicant is disabled within the meaning of the Social

Security Act."  *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  Those

five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity;

(2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a

listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether

the claimant is capable of performing other work that exists in significant numbers in the

national economy.  *Id.* at 724-25.  The claimant bears the burden of proof for the first four steps.

*Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).  If the claimant fails to meet the

burden at any of those steps, the claimant is not disabled.  *Id.*; *Bowen v. Yuckert*, 482 U.S. 137,

140-41 (1987).

The Commissioner bears the burden of proof at step five, where the Commissioner must

show the claimant can perform other work that exists in significant numbers in the national

economy, "taking into consideration the claimant's residual functional capacity, age, education,

and work experience."  *Tackett*, 180 F.3d at 1100.  If the Commissioner fails to meet this burden,

the claimant is disabled.  *Bustamante*, 262 F.3d at 954 (citations omitted).

### III.    The ALJ's Decision

The ALJ applied the five-step sequential evaluation process to determine if plaintiff is disabled.  Tr. 15-22.  At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his amended alleged onset date through his date last insured.  Tr. 15-16.  At step two, the ALJ determined that plaintiff suffered from the severe impairments of right upper extremity bicep tendonitis, right elbow strain, left knee meniscal tear, and Morton's neuromas of the right foot.  Tr. 16.

At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that meets or equals a Listing.  Tr. 16.

The ALJ then determined plaintiff's residual functional capacity ("RFC"), and found that plaintiff retained the ability to perform light work with the following limitations:

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently and can stand and/or walk for approximately 2 hours and sit for approximately 6 hours, in an 8-hour workday, with normal breaks. [Plaintiff] cannot climb ladders, ropes and scaffold and can occasionally climb stairs and ramps. The claimant can occasionally crouch, but cannot kneel or crawl. He can frequently reach in all directions, bilaterally. [Plaintiff] can occasionally forcefully grip (i.e. use wrenches, open bottles and jars, wring out rags) and can occasionally use foot controls with the right lower extremity.

Tr. 17.

At step four, the ALJ found that plaintiff was unable to perform his past relevant work.  Tr. 20.  At step five, the ALJ determined that plaintiff could nevertheless perform jobs existing in significant numbers in the national economy, including bench assembler, small parts assembler, and facility rental clerk.  Tr. 21.  The ALJ therefore concluded that plaintiff was not disabled.  Tr. 22.

**DISCUSSION**

Plaintiff contends that "the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to develop the record and instead relied on her own lay interpretation of the medical data." Pl. Br. 6. The RFC is "the most [the claimant] can do despite [the claimant's] limitations" and is "assess[ed] . . . based on all the relevant evidence in [the claimant's] record." 20 C.F.R. §404.1545(a)(1). Plaintiff argues that, because the non-examining state agency medical consultants did not recommend an RFC, the ALJ "[t]hus, . . . had no medical opinion as to Plaintiff's functionality" for purposes of determining the RFC. Pl. Br. 6; *see* Tr. 66, 75 ("No RFC /MRFC assessments are associated with this claim."). Plaintiff also asserts that the "[t]he raw medical data in this case involved numerous medical imaging which escapes an ALJ's lay medical opinion," and "an ALJ may not rely on his own unsupported interpretation of the medical evidence." Pl. Br. 8 (quoting *Daniel D. v. Comm'r, Soc. Sec. Admin.*, No. 3:18-CV-00654-HZ, 2019 WL 4467631, at *10 (D. Or. Sept. 17, 2019)).

The ALJ recognized that the state agency consultants had "found there was insufficient evidence to make any determination on" plaintiff's RFC. Tr. 17. Yet the ALJ nevertheless concluded that plaintiff had the ability to perform light work, was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for approximately 2 hours and sit for approximately 6 hours, in an 8-hour workday, with normal breaks, could not climb ladders, ropes and scaffold, but could occasionally climb stairs and ramps, could occasionally crouch, but could not kneel or crawl, could frequently reach in all directions, bilaterally, could occasionally forcefully grip (i.e. use wrenches, open bottles and jars, wring out rags), and could occasionally use foot controls with the right lower extremity. Tr. 17.

"In determining a plaintiff's RFC limitations, an ALJ may not rely on his own unsupported interpretation of the medical evidence." *Davis v. Colvin*, No. 3:15-CV-00843-SI,

PAGE 5 – OPINION AND ORDER

2016 WL 8674265, at *8 (D. Or. Aug. 12, 2016) (citing *Williams v. Astrue*, 355 F. App'x. 828,

832 n.6 (5th Cir. 2009) (finding that "the ALJ impermissibly relied on his own medical opinions

as to the limitations presented")); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay

person, however, the ALJ was simply not qualified to interpret raw medical data in functional

terms and no medical opinion supported the determination."); *Rohan v. Chater*, 98 F.3d 966, 970

(7th Cir. 1996) (stating that "ALJs must not succumb to the temptation to play doctor and make

their own independent medical findings").[2]  "An ALJ must have a medical opinion to support his

or her RFC."  *Aliza W. v. Saul*, No. CV 20-09189-JEM, 2021 WL 3190902, at *4 (C.D. Cal. July

28, 2021).  "Without a medical opinion to support the conclusion that Plaintiff was able to

perform" a certain level of work, lift and carry certain weight, or sit, stand or walk for certain

periods of time, "the ALJ's RFC lacks the support of substantial evidence."  *de Gutierrez v. Saul*,

No. 1:19-CV-00463-BAM, 2020 WL 5701019, at *6 (E.D. Cal. Sept. 24, 2020) (citing *Perez v.

Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) ("where an ALJ reaches

conclusions about claimant's . . . capacity without any assessment of residual functional capacity

by a physician, the ALJ's conclusions are not supported by substantial evidence"); *Goolsby v.

Berryhill*, 2017 WL 1090162, at *8 (E.D. Cal. Mar. 22, 2017) (finding that an ALJ erred in

---

[2] *See also de Gutierrez v. Saul*, No. 1:19-CV-00463-BAM, 2020 WL 5701019, at *5 (E.D. Cal.
Sept. 24, 2020) ("It is well-settled that an ALJ may not render her own medical opinion and is
not empowered to independently assess clinical findings.") (citing *Tackett*, 180 F.3d at 1102–03
(holding an ALJ erred in rejecting physicians' opinions and rendering his own medical
opinion); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot
arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb
to the temptation to play doctor and make his own independent medical findings"); *Nguyen v.
Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, the ALJ is "simply not qualified to
interpret raw medical data in functional terms"); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048
(C.D. Cal. 2010) (reasoning that it is improper for the ALJ to act as the medical expert); *Padilla
v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (opining that an ALJ is not qualified to
extrapolate functional limitations from raw medical data)).

including "simple routine tasks" in RFC when the record did not contain medical opinions supporting this limitation); *Shipp v. Colvin,* 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) ("Since...the record contains no assessment by a treating or examining doctor regarding the effect of plaintiff's physical impairments on her ability to function, it appears that the ALJ's physical residual functional capacity assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record.")).

"Here, there is no medical opinion assessing a light work RFC.  There are no medical opinions supporting the limitations included in the ALJ's RFC for Plaintiff.  The ALJ is simply not qualified to interpret raw medical data in functional terms."  *Nicole R. v. Kijakazi*, No. CV 20-10870-JEM, 2021 WL 7286037, at *4 (C.D. Cal. Oct. 5, 2021) (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1995); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1006 (C.D. Cal. 2008) (holding ALJ is not qualified to extrapolate functional limitations from raw medical data)).

The Commissioner argues that the RFC is supported by substantial evidence because the ALJ considered the record and reasonably weighed the medical evidence.  While the Commissioner is correct that the ALJ properly considered and weighed the medical evidence, it does not follow that the RFC is supported by substantial evidence.  Again, there is no medical opinion in the record regarding plaintiff's specific functional abilities sufficient to support the ALJ's RFC findings.  Therefore, the ALJ's RFC was not supported by substantial evidence.  On remand, the ALJ shall further develop the record and reformulate the RFC accordingly.

//

//

//

**CONCLUSION**

For the reasons stated, the Commissioner's decision is REVERSED and REMANDED for

further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED July 28, 2022.

_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge